J-A13044-21

2021 PA Super 113

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                                            :         PENNSYLVANIA
                                            :

                  v.                             :
                                            :
                                            :

TAROUN HAND                         :
                                            :

            Appellant            :      No. 1359 EDA 2020

Appeal from the PCRA Order Entered July 13, 2020
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0009972-2014

BEFORE:   BENDER, P.J.E., DUBOW, J., and STEVENS, P.J.E.[*]

OPINION BY STEVENS, P.J.E.:                 **FILED:  MAY 28, 2021**

Appellant Taroun Hand appeals from the Order entered in the Court of Common Pleas of Philadelphia County on July 13, 2020, denying his first petition filed pursuant to the Post Conviction Relief Act.[1]  Following our review, we affirm.

The trial Court detailed the procedural history and facts herein as follows:

> On April 5, 2017, following a waiver trial, Taroun Hand ("Appellant") was found guilty of two counts of simple assault and recklessly endangering another person ("REAP"); and one count of driving under the influence ("DUI")-controlled substance or metabolite 1st offense; aggravated assault by vehicle while DUI; and DUI of alcohol or controlled substance-impaired ability.[1] On June 5, 2017, this court sentenced Appellant to an aggregate term of five to ten years' incarceration,[2] followed by two years of probation. This court further ordered Appellant to pay $1,000.00

---

[*] Former Justice specially assigned to the Superior Court.
[1] 42 Pa.C.S.A. ¶¶ 9541-9546.

in fines, undergo a twelve-month license suspension, and complete alcohol highway safety classes and drug and alcohol assessment.

## I.    **Procedural History-Appellant's Direct Appeal**

On June 8, 2017, Appellant filed a timely post-sentence motion, arguing that his sentence was excessive and "based on the wrong guidelines"; this court denied that motion on June 23, 2017.[3] On July 18, 2017, Appellant timely filed a notice of appeal. On July 19, 2017, the trial court ordered Appellant to file a statement of errors complained of on appeal, pursuant to Pa.R.A.P. 1925(b). Appellant timely filed a 1925(b) statement on October 20, 2017, arguing, *inter alia*, this court erred "in denying [his] Motion to Suppress where the police failed to obtain a warrant to draw the defendant's blood, where exigent circumstances were not present and specific."

This court issued an opinion, on March 16, 2018, asserting that each issue raised by Appellant was without merit. The Superior Court affirmed Appellant's convictions and judgment of sentence in an unpublished memorandum on November 26, 2018. Commonwealth v. Hand, No. 2272 EDA 2017, 2018 WL 6167262 (Pa. Super. Nov. 26, 2018). The Superior Court specifically affirmed "on the basis of the trial court's reasoning." Id. at *2.

## II. **Procedural History-Appellant's Current Appeal**

Appellant filed a *pro se* petition under the Post Conviction Relief Act[4] ("PCRA") on January 16, 2019. Attorney Peter A. Levin was appointed to represent Appellant on January 24, 2019, and he filed an amended PCRA petition on July 12, 2019 ("Appellant's PCRA petition"). In his petition, Appellant asserted (1) trial counsel "was ineffective at [the] suppression hearing"; and (2) trial counsel was "ineffective at sentencing." (PCRA Mem. at 12-14). The Commonwealth filed a Motion to Dismiss Appellant's petition on January 22, 2020.

After reviewing Appellant's petitions, the Commonwealth's response, and all relevant matters of record, this court determined that Appellant's claims were meritless, did not raise any issue of material fact, and did not warrant an evidentiary hearing. Accordingly, on February 26, 2020, this court issued an order informing Appellant that his petition would be dismissed pursuant to Pa.R.Crim.P. 907, and formally dismissed the petition on July 13, 2020.

Two days later, on July 15, 2020, Appellant timely filed a notice of appeal. On July 17, 2020, this court ordered Appellant to file a statement of errors complained of on appeal, pursuant to Pa.R.A.P. 1925(b). Appellant timely filed his 1925(b) statement on August 4, 2020[.]

***

**FACTS**

Appellant's charges arise from a pre-Birchfield incident, during which he caused a four-vehicle accident and injured two minor pedestrians while driving under the influence of narcotics.

On July 8, 2014, around 4:00 p.m., Officer Robert McCarthy ("Officer McCarthy") and Officer Phillip Scratchard ("Officer Scratchard") responded to reports of a four-car accident on the 700 block of Lehigh Avenue in Philadelphia. (N.T. 6/1/16 at 6). Upon their arrival, the officers observed a red 1998 Dodge Caravan on the sidewalk, and witnesses identified Appellant as the operator of the vehicle. (Id. at 9-10). A SEPTA (Southeastern Pennsylvania Transportation Authority) bus driver informed the officers that she was traveling eastbound on Lehigh Avenue when Appellant, traveling westbound, drove his vehicle across several lanes of traffic and continued into oncoming traffic. (Id. at 31); see also, (N.T. 4/5/17 at 61). Appellant attempted to swerve around the bus, but crashed into the bus's rear, passenger-side tire. (N.T. 6/1/16 at 31). Appellant did not attempt to stop his vehicle, and continued traveling westbound into eastbound traffic. (Id. at 31).

Two additional witnesses, Alicia Ford and Myra Alicia, told officers that after Appellant collided with the bus, he struck a second vehicle (a parked, red 1992 Toyota Camry), before colliding with a yet another parked vehicle (a white 2004 Jeep Liberty). (Id. at 31-32). Appellant struck the third vehicle with such force that it was forced onto the sidewalk, where the vehicle struck and injured two pedestrian children. (Id. at 32); (N.T. 4/5/17 at 61).

The children's mother, Santa Caraballo ("Caraballo"), testified that she and her two daughters were standing on the sidewalk when they saw Appellant's vehicle "come across multiple lanes of Lehigh Avenue, hit a SEPTA bus, hit two parked cars -- including a white jeep that hit both of her daughters." (Id. at 61). When the Jeep struck the girls, N.T. (who was thirteen years old at the time) flew through the air, struck a nearby wall, and lost

- 3 -

consciousness. (Id. at 61-62). The other minor, E.F. (who was only seven years old), was trapped under the Jeep. (Id. at 62). Caraballo testified E.F.'s body was crushed under the vehicle, and observers were only able to see the child's feet. (Id.). Thankfully, several bystanders managed to remove the minor from under the Jeep. (Id.).

Both minors were subsequently transported to St. Christopher's Hospital. (N.T. 4/5/17 at 66-68). Doctors treated N.T. for abrasions and minor injuries, and discharged her from the hospital that night. (Id. at 66-67). After the incident, she continued to suffer from. soreness in her neck and head. (Id. at 67). However, E.F. sustained several severe injuries, including a broken pelvis, a broken leg, and a lacerated liver. (Id. at 67-68). E.F. was hospitalized for nearly three weeks and bedridden for an additional three weeks in her home. (Id. at 68). Doctors placed E.F.'s torso and right leg into full casts, and the child required physical therapy and crutches throughout the majority of the following year. (Id.).

As the complainants received medical care, responding officers interviewed Appellant at the scene of the incident. Officer McCarthy noted that Appellant did not smell like alcohol, but he had bloodshot eyes and his speech was so slow and slurred that he was "incoherent" (N.T. 6/1/16 at 11-13, 17-18). Based on the officer's sixteen years of experience, he believed that Appellant was under the influence of narcotics and unfit to safely operate a motor vehicle. (Id. at 14-15). Officer McCarthy arrested Appellant, and police-escorted medics transported him to the hospital. (Id. at 24).

At the hospital, Accident Investigation District ("AID") Officer Mark Minke read Appellant his O'Connell[6] warnings and a 75-439 Form, which outlined his rights and the potential criminal consequences of refusing to submit to a blood draw. (N.T. 6/10/16 at 6-7). After reviewing the warnings with Officer Minke, Appellant consented to a blood draw. (Id. at 9). Forensic toxicologist Dr. Richard Cohn then administered a DRUGSCAN blood test and determined that Appellant's blood contained traces of Clonazepam (a schedule IV narcotic) and Oxycodone (a schedule II narcotic). (N.T. 4/5/17 at 69). He concluded to a reasonable degree of scientific certainty that Appellant had recently used "multiple psychoactive agents taken concomitantly or at close time proximity to one another," and he had used "toxicologically significant dosage amounts," such that he was unfit to safely operate a motor vehicle at the time of the accident. (Id. at 69-70).

Prior to trial, Appellant moved to suppress evidence of the blood draw, arguing that he had been arrested without sufficient probable cause. Following a bifurcated hearing on June 1, 2016 and June 10, 2016, this court denied Appellant's motion. Less than two weeks later, the Supreme Court of the United States issued its opinion in Birchfield v. North Dakota, holding that "motorists cannot be deemed to have consented to submit to a blood test on pain of committing a criminal offense." 136 S. Ct. 2160, 2186 (2016). Accordingly, this court granted reconsideration of Appellant's motion. During the reconsideration hearing, the Commonwealth conceded that Appellant's consent was invalid, arguing instead that exigent circumstances namely the natural dissipation of intoxicants in the blood stream-justified a warrantless blood draw. (N.T. 4/5/17 at 6).

To show that there was exigency in the case at bar, the Commonwealth offered testimony from Philadelphia Police Officer William Lackman ("Officer Lackman"), who specialized in major crashes and DUIs.[7] (Id. at 10). He opined, after reviewing the record in this specific case, that it would have taken at least six hours to obtain [a] warrant for the underlying blood draw. (Id. at 14). He further explained that the DRUGSCAN test used in this case could only detect traces of illicit substances injected or ingested within six hours of the tests' administration. (Id. at 38-40). Based on his professional experience, he testified that it would have been especially difficult to timely secure a warrant in this case, due the multiple victims, witnesses, and vehicles involved in the accident, and because this case did not involve "just a DUI." (Id. at 13-16, 28, 35). This court agreed, and again denied Appellant's request for suppression.

_____

[1] 18 Pa.C.S.A. § 2701(a), 18 Pa.C.S.A. § 2705, 75 Pa.C.S.A. § 3802(d)(1), 75 § 3735.1, and 75 Pa.C.S.A. § 3802(d)(2), respectively.

[2] This court sentenced Appellant to five to ten years' incarceration for aggravated assault by vehicle, a concurrent seventy-two hours to six months' incarceration for DUI-impaired ability, followed by two years of probation for simple assault. On both counts of REAP, Appellant was found guilty with no further penalty. Finally, Appellant's conviction under § 3802(d)(1) (DUI-controlled substance or metabolite) merged with his conviction under § 3802(d)(2) (DUI-impaired ability).

[3]Defense counsel expressly admitted that she filed the post sentence motion in error, explaining the motion was based on her erroneous application of inapplicable sentencing guidelines:

> **Ms. Snyder**: Your Honor, we have actually reviews [sic] a couple things about the guidelines today, a couple of the section numbers that I think I might have had wrong. Ms. Hedrick has them correct. So I think the guidelines were correct. . . What I would ask, though, is if your Honor would not mind doing a denial of the post-sentence motions. so that I have 30 days to prepare the notice of appeal that I know he wants.... He does not need to be resentenced.

(N.T. 6123117 at 3-4).

[4] 42 Pa.C.S.A. § 9541, *et seq*.

[5] See Birchfield v. North Dakota, 136 S. Ct. 2160, 2186 (2016) (holding motorists cannot be deemed to have consented to submit to a blood test on pain of committing a criminal offense).

[6] Dep't of Transp. v. O'Connell, 555 A.2d 873 (Pa. 1989).

Trial Court Opinion, filed 11/16/20, at 1-7.

In his appellate brief, Appellant presents the following Statement of

Questions Involved:

> I. Whether the court was in error in denying the Appellant's PCRA petition without an evidentiary hearing on the issues raised in the amended PCRA petition regarding trial counsel's ineffectiveness.
>
> II. Whether the court erred in not granting relief on the PCRA petition alleging counsel was ineffective.

Brief for Appellant at 7.

"Our standard of review for issues arising from the denial of PCRA relief

is well-settled. We must determine whether the PCRA court's ruling is

supported by the record and free of legal error." ***Commonwealth v. Presley***, 193 A.3d 436, 442 (Pa.Super. 2018) (citation omitted), *appeal denied*, 201 A.3d 154 (Pa. 2019). With the exception of the PCRA court's legal conclusions, our standard of review is deferential:

> We view the findings of the PCRA court and the evidence of record in a light most favorable to the prevailing party. With respect to the PCRA court's decision to deny a request for an evidentiary hearing, or to hold a limited evidentiary hearing, such a decision is within the discretion of the PCRA court and will not be overturned absent an abuse of discretion. The PCRA court's credibility determinations, when supported by the record, are binding on this Court; however, we apply a *de novo* standard of review to the PCRA court's legal conclusions.

***Commonwealth v. Mason***, 130 A.3d 601, 617 (Pa. 2015) (citations and quotation marks omitted).

Appellant first maintains he was entitled to a hearing on the ineffective assistance of counsel claims raised in his Amended PCRA Petition. The entirety of Appellant's argument in this regard reads as follows:

> The PCRA Court erred by not granting an evidentiary hearing on the issues raised in Appellant's amended PCRA petition. Although the right to an evidentiary hearing is not absolute, a court may not summarily dismiss a PCRA petition when the facts alleged in the petition, if proven, would entitle the Appellant to relief. Commonwealth v. Barbosa, 819 A.2d 81, 85 (Pa.Super. 2003). A hearing should be held on any issue that the PCRA Court is not certain lacks merit. Commonwealth v. Early, 546 A.2d 1236, 1240 (Pa. Super. 1988). (citing Commonwealth v. Heck, 467 A.2d 896 (Pa.Super. 1983)). Furthermore, it is the responsibility of the reviewing court on appeal to examine each issue raised in the PCRA petition in light of the record certified before it in order to determine if the PCRA court erred in its determination that there were no genuine issues of material fact in controversy and in denying relief without conducting an

> evidentiary hearing. Commonwealth v. Hardcastle, 701 A.2d 541, 542-43 (Pa. 1997).
>
>   Therefore, the PCRA Court should have granted an evidentiary hearing to provide the forum to demonstrate such manifest injustice. Commonwealth v. Leonhardt, 517 A.2d 1342 (Pa.Super. 1986).

Brief for Appellant at 13-14.

As Appellant acknowledges, "a PCRA petitioner is not automatically entitled to an evidentiary hearing." **Commonwealth v. Miller**, 102 A.3d 988, 992 (Pa. Super. 2014).  Rather, the PCRA court may "decline to hold a hearing if the petitioner's claim is patently frivolous and has no support either in the record or other evidence." **Id.** (citation omitted).  In its Rule 1925(a) Opinion, the PCRA court explained it did not err in summarily dismissing Appellant's petition because the first claim of ineffective assistance of counsel Appellant presented in his concise statement was based on misstatement of fact and/or law and the second was categorically barred by the PCRA as previously decided on direct appeal by this Court.  Without adequately developing an argument, Appellant baldly asserts he was entitled to a hearing notwithstanding.

As this issue is fatally underdeveloped, it is waived. **Commonwealth v. Gould**, 912 A.2d 869, 873 (Pa.Super. 2006).  ("An appellate brief must provide citations to the record and to any relevant supporting authority. The court will not become the counsel for an appellant and will not, therefore, consider issues which are not fully developed[.]").

Appellant next asserts counsel was ineffective at the suppression hearing for failing to object to Officer Lackman's testimony that there were exigent circumstances to justify a warrantless blood draw. Appellant argues that although Officer Lackman testified the arrest was exigent because Appellant was charged with aggravated assault and that such charge would require additional effort to obtain a search warrant which would cause a delay in the warrant process, Appellant was not charged with aggravated assault until two months after his arrest. Appellant posits:

> Officer Lackman stated he was giving an opinion based on more than a DUI charge, even though Appellant was not charged with aggravated assault. Thus the officer was presented with inaccurate information.
> That information was significant for constructing a time line to obtain a search warrant for a blood draw because without the aggravated assault charge, there was no need to go to the hospital to question the level, [sic] of injury related to the victims in the crash. As Officer Lackman stated, "that too would be a fact that I would feel would be required for the search warrant." (N.T. 4/5/17 at p. 18, line 13-17).

Brief for Appellant at 16. Appellant contends that because trial counsel did not argue this point, object, or cross-examine Officer Lackman in this regard during the suppression hearing, Appellant was prejudiced by counsel's ineffectiveness. *Id*.

Counsel is presumed to have been effective. *See Commonwealth v. Brooks*, 839 A.2d 245, 248 (Pa. 2003). In order to overcome that presumption and prevail on a claim of ineffectiveness, Appellant must establish that: (1) the underlying claim has arguable merit; (2) counsel had

no reasonable basis for his conduct; and (3) he was prejudiced by counsel's ineffectiveness, *i.e.* there is a reasonable probability that because of the act or omission in question, the outcome of the proceeding would have been different. *See id.* In determining whether trial counsel's actions or omissions were reasonable, the question is not whether there were other more logical courses of action he or she could have pursued; rather, the question is whether counsel's decisions had any reasonable basis. *See Commonwealth v. Chmiel*, 30 A.3d 1111, 1127 (Pa. 2011).

Both the PCRA court and the Commonwealth stress that Officer Lackman did not testify he performed the blood draw because Appellant had been charged with aggravated assault or that such a charge was the basis for his determination of exigency. Rather, as the Commonwealth stated in its motion to dismiss:

> [Appellant] only cites one excerpt from Officer Lackman's testimony as evidence: "[n]ow, in a situation where there's additional charges, such as an aggravated assault, aggravated assault while driving under the influence, homicide by vehicle, DUI, et cetera, then . . . a warrant would be obtained at that point. [Appellant's] claim with regard to the excerpt is insufficient. When put into its proper context, Officer Lackman's statement was [clearly] given as an illustrative explanation of when Philadelphia police officers seek to obtain a warrant for a blood draw generally, not solely in this specific case.

(Comm. Mot. at 6) (citing N.T. 4/5/17 at 27); Trial Court Opinion, 11/16/20, at 10.

The entire exchange reads as follows:

- 10 -

[Defense Counsel]: So is the procedure, then, that if they refuse and they're conscious, you just don't get a warrant?

[Officer Lackman]: If it is -- if it's a DUI only -- if we're talking about a scenario where a person is in custody and the only charge that they're looking at is Vehicle Code 3802, a DUI charge, then yes, a warrant would not be obtained if the person refused testing.

That's actually part of the DUI law. It's actually in -- I think -- I'm sorry -- the vehicle codes. In 1547, there's a one-sentence line where it indicates if the subject -- if the subject refuses testing, a period -- I'm sorry -- comma, a test will not be conducted.

Now, in a situation where there's additional charges, such as aggravated assault, aggravated assault by DUI, homicide by vehicle, DUI, et cetera, then no, a warrant would be obtained at that point. (N.T. 4/5/17 at 27).

As the above testimony evinces, Officer Lackman was speaking hypothetically when he discussed a circumstance where one is charged with aggravated assault and other crimes. He neither asserted that Appellant had been charged with aggravated assault nor did he state such a charge supported his finding of exigency herein. As such, the trial court properly determined trial counsel could not be deemed ineffective for failing to object to a statement that Officer Lackman never had made.

Moreover, to the extent Appellant relies upon the premise that trial counsel did not "expressly say during argument in support of Motion to Suppress that this particular exigent circumstance was lacking in this case . . . " *see* Brief for Appellant at 15, Appellant's argument ignores the fact that this Court found on direct appeal that exigent circumstances for the blood draw existed under the totality of the circumstances. *Commonwealth v. Hand*, No. 2272 EDA 2017, unpublished memorandum at 2-4 (Pa.Super. filed

November 26, 2018). Thus, this claim is not cognizable under the PCRA as it has been previously litigated, and even if it were, the record reveals trial counsel did argue that no exigent circumstances existed:

> So if the exigent circumstances are that it takes a long time to get a warrant, that's not really exigent circumstances. There's nothing—there's nothing exemplary or exceptional about that other than the police department hasn't yet figured out how to get blood faster in a DUI case where they really, really, really want it.
>
> What we would be saying by saying that it's exigent circumstances to have to drive all around the city, getting all this done is that any hospital case is not exigent circumstances.
>
> Or really, what they're trying to say, is that any case where the person refuses a blood test, but there's something else under the law that makes them think that they should get it or that they should give it under the law or that their policy says to give it under the law, that's now exigent. That's what they're asking Your Honor to do, is to say, "Okay. It will take a really long time, so we don't have to do it.
>
> But there are no circumstances within this case that show that it is an exigent situation, so we don't have to do it."
>
> **But there are no circumstances within this case that show that it is an exigent situation, that the situation calls for that**.
>
> ***
>
> **Because there is nothing that points to this case at all that shows that it's exigency.**

N.T., 4/5/17, at 44-46 (emphasis added).

Trial counsel's argument, coupled with the fact that this Court previously held the warrantless blood draw was valid, prevents Appellant from establishing that this underlying claim set forth in his PCRA petition has arguable merit or that he was prejudiced by counsel's alleged inaction. **See Brooks**, **supra**.

Finally, Appellant argues trial counsel had been ineffective at sentencing. Nevertheless, PCRA counsel notes that after a thorough review of the trial court's Rule 1925(a) Opinion, counsel "cannot find any grounds to support Appellant's claim on this issue. However, Appellant wants the issue presented for review." ***See*** Brief for Appellant at 17 n. 1.

Appellant posits the sentence he received was not within the guidelines and that his offense gravity score should have been an eight rather than a nine. In addition, Appellant argues the should not have been sentenced to the statutory maximum as this was his first DUI, he remained at the scene of the accident, cooperated, had his driver's license and that this was his first DUI.

In its Rule 1925(a) Opinion, the trial court set forth the following analysis when considering this issue:

> In his second allegation of error, Appellant argues that "the Commonwealth supplied the sentencing court with incorrect sentencing guidelines and the trial attorney failed to object." Appellant specifically posits that the lead charge in this case-aggravated assault by vehicle while DUI-has an offense gravity score ("OGS") of seven, rather than nine, as the Commonwealth argued at sentencing. He supports his argument solely with the assertion that this charge "by virtue of its status as a second-degree felony," carries an OGS of seven. Appellant's assertions are flagrantly erroneous, and he is not entitled to relief
>
> Upon a defendant's conviction of a felony and/or misdemeanor, a sentencing court must consider, *inter alia*, the guidelines promulgated by the Pennsylvania Commission on Sentencing. 42 Pa.C.S.A. § 9721(b); 204 Pa.Code 303.1(a). To determine the suggested sentence for each conviction, sentencing courts must determine the defendant's prior record score and, of relevance to this appeal, the OGS of each offense. 204 Pa.Code § 303.2(a). Section 303.15 sets forth the OGS for every offense

- 13 -

contained within the Pennsylvania Crimes Code. See 204 Pa.Code § 303.15. For a conviction of aggravated assault by vehicle while DUI (under 75 Pa.C.S.A. § 3735.1(a), Section 303.15 plainly assigns an offense gravity score of nine.

Here, this court found Appellant guilty of aggravated assault by vehicle while DUI, under 75 Pa.C.S.A. § 3735.1(a). Accordingly, **the applicable OGS is nine-not seven**, as Appellant repeatedly asserts. See 204 Pa.Code § 303.15. Further, Appellant had a prior record score of five at the time of his sentencing. (N.T. 6/5/17 at 3). Accordingly, the Commonwealth and trial counsel **correctly stated that the applicable guidelines recommended a minimum sentence of 48 to 60, +/-12**. See (N.T. 6/5/17 at 4); 204 Pa.Code § 303.16(a).

Moreover, this court can find no authority supporting Appellant's inexplicable claim that all second-degree felonies, "by virtue of their status as second-degree felonies," carry an OGS of seven. In fact, Section 303.15 plainly states the opposite, as evidenced by the scores of delineated second-degree felonies that carry an OGS other than seven. For example, aggravated. indecent assault-forcible compulsion (18 Pa. C.S.A. § 3125(a)(2)) is graded as a second-degree felony and **carries an OGS of ten**. Conversely, arson endangering property-intent to collect insurance (18 Pa.C.S.A. § 3125(c)(3)) is a second-degree felony and **has an OGS of six**. Accordingly, Appellant's factual assertions and corresponding claims are as confounding as they are inaccurate, and there is no imaginable basis for relief.

Trial Court Opinion, filed 11/16/20, at 13-14 (emphasis in original).

We find no abuse of discretion in the trial court's analysis.  In light of all of the foregoing, we affirm the PCRA court's Order.

Order affirmed.

Judge Dubow has joined the Opinion.

P.J.E. Bender concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/28/21